John A. Buric, State Bar No. 012074
Andrea M. Simbro, State Bar No. 031530
Lance D. Hough, State Bar No. 035017
**WARNER ANGLE HALLAM**
**JACKSON & FORMANEK PLC**
2555 East Camelback Road, Suite 800
Phoenix, Arizona 85016
Telephone: (602) 264-7101
E-mail:  jburic@warnerangle.com
          asimbro@warnerangle.com
          lhough@warnerangle.com
Neil D. Greenstein, VA Bar No. 18555
(admitted *pro hac vice*)
**TechMark®**
1934 Old Gallows Road, Suite 350
Vienna, Virginia 22182
Telephone: (347) 514-7717
Email: ndg@techmark.com
*Attorneys for Plaintiff Wheel Pros, LLC*

**IN THE U.S. DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Wheel Pros, LLC, a Delaware limited liability company,<br><br>　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>Jiangxi Rayone Wheels Technology Company Ltd., a Chinese entity, *et al.*,<br>　　　　　　　　　Defendants. | **Case No. 2:23-cv-02242-SRB**<br><br>**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT JIANGXI RAYONE WHEELS TECHNOLOGY COMPANY LTD. AND MEMORANDUM OF POINTS AND AUTHORITIES** |

Pursuant to Rule 55(b)(2), FRCP,[1] Plaintiff Wheel Pros, LLC ("Plaintiff") requests that the Court enter default judgment against Defendant Jiangxi Rayone Wheels Technology Company Ltd. ("Rayone"). A Proposed Order is submitted herewith.

**MEMORANDUM OF POINTS AND AUTHORITIES**

### I.　　INTRODUCTION

This is an action for counterfeiting, patent and trademark infringement, and related causes of action. [ECF 1]. Plaintiff filed this action on October 27, 2023 and served Rayone

---

[1] Further citations to "Rules" denote to the Federal Rules of Civil Procedure.

four days later. [ECF 1, 8]. Although it has not appeared [ECF 23, pg. 2], Rayone knows the case is pending and even engaged in settlement discussions. [*See* Greenstein Decl., ¶¶4-6]. Plaintiff requested the clerk to enter Rayone's default on January 19, 2024. [ECF 22]. Plaintiff has now gathered evidence demonstrating the willfulness of Rayone's ongoing infringement and the danger posed by Rayone's counterfeits, which do not meet U.S. safety standards.

In view of Rayone's default, "'the factual allegations of the complaint, except those relating to the amount of damages, [are] taken as true.'" *Coach, Inc. v. Diva Shoes & Accessories*, No. 10-5151 SC, 2011 WL 1483436, at *2 (N.D. Cal. Apr. 19, 2011). In the case of counterfeiters, the Lanham Act "increases the cap on statutory damages from $200,000 to $2,000,000 [per counterfeit mark, per type of goods] for certain *willful* violations." *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. ___, 140 S. Ct. 1492, 1495 (2020) (emphasis in original), *citing* 15 U.S.C. § 1117(c). Rayone's default establishes that it is both a willful patent infringer and a willful counterfeiter. [ECF 1, *e.g.*, ¶54]. The evidence submitted herewith proves that Rayone's business model is to sell unsafe, untraceable knockoffs of brand-name wheels, including "$3,400,000+" so far into the U.S. [*See* Roberts Decl., ¶¶3-4, 6-7, Ex. B].

Plaintiff requests that the Court grant relief to make it whole, to punish Rayone for its flagrantly illegal and dangerous actions, and to deter Rayone and others from continuing their unlawful business in the U.S., with:

(1) a permanent injunction preventing Rayone from counterfeiting and otherwise infringing Wheel Pros' trademark and patent rights, unfairly competing with Wheel Pros, and deceiving and endangering the public;

(2) an award of Rayone's total profits under 35 U.S.C. § 289, trebled pursuant to 35 U.S.C. § 284;

(3) a punitive award of maximum statutory damages under 15 U.S.C. § 1117(c);

(4) a finding that this case is exceptional, along with an award of Wheel Pros' reasonable attorneys' fees under both 15 U.S.C. § 1117(a) and 35 U.S.C. § 285, the amount to be proven by separate post-judgment motion pursuant to Rule 54(d)(2);

(5) Wheel Pros' costs under Rule 54(d)(1);

(6) pre- and post-judgment interest on the patent damage award under 35 U.S.C. § 284; and

(7) post-judgment interest on the statutory damage award pursuant to 28 U.S.C. § 1961.

## II.   PROCEDURAL BACKGROUND

Wheel Pros filed its Complaint on October 27, 2023 [ECF 1] against Rayone and other defendants alleging trademark counterfeiting and infringement under both state and federal law, as well as design patent infringement. The non-Rayone defendants (collectively, the "Chase Defendants") settled and were dismissed without prejudice. [ECF 24]. Plaintiff served Rayone's General Manager in person on October 31, 2023, at a trade show in Nevada, where Rayone was attempting to sell infringing wheels. [ECF 8; *See* Burns Decl., ¶¶2-6 & Burns Exs. A & B].

The Morgan Lewis firm contacted Plaintiff's counsel on Rayone's behalf on November 16, 2023 to discuss settlement but never entered an appearance in this action. [Greenstein Decl., ¶4] As an accommodation to Morgan Lewis, Plaintiff obtained two different Orders extending Rayone's time to answer. [ECF 14-16, 18]. In granting the second extension, the Court warned that no further extensions would be granted. The parties failed to settle and Morgan Lewis withdrew on January 4, 2024. *See* Greenstein Decl., ¶4. Plaintiff then asked the clerk to enter default, which issued on January 19. [ECF 21, 22].

## III.   UNCONTESTED ALLEGATIONS

### 1. Plaintiff is the Leading Aftermarket Wheel Company in the U.S.

Plaintiff is the largest provider of aftermarket wheels in North America, with over one billion dollars in yearly sales of its custom wheel designs. [ECF 1, ¶¶13, 20-24]. One of Plaintiff's leading wheel brands is **FUEL**, which is protected by federal trademark registrations for the word **FUEL** and the designs [F] and [F] for use on wheels and related goods. Plaintiff's FUEL® Marks were first adopted in 2008 and have been in continuous use since on wheels and related products by Plaintiff and its predecessors. [ECF 1, ¶¶21-24]. Plaintiff registered the marks in 2009, 2012 and 2018. [*See* Reichenthal Decl, ¶¶3-5, Exs. A-C]. Plaintiff has

extensively marketed the FUEL® line; total sales for the brand have exceeded $500,000,000. *Id*. at ¶¶21, 36, 66.

### 2. Defendant Rayone Is a Large-Scale Counterfeiter of Famous Brands

Defendant Rayone is a Chinese manufacturer of cheap, unsafe knockoffs of brand-name wheels that it sells to consumers, distributors, and re-sellers through interactive websites. [*See* Roberts Decl., ¶¶3-7, Ex. A]. Rayone's unlawful counterfeiting is widespread and accelerating; on February 26, 2024 Rayone claimed on its Abibaba.com page to have sold "**$3,000,000+**" of its ersatz wheels into the U.S. [*Id*., ¶¶5, Ex. A & E], while just three days later it claimed to have sold "**$3,400,000+.**" [*Id*., ¶¶5-6, Ex. B]. The Abibaba.com page shows that Rayone is also actively selling knockoffs of other brands, including BMW, Toyota, and BBS. *Id*., ¶8

### 3. Rayone Is Willfully and Deceptively Counterfeiting All Three of Plaintiff's FUEL® Marks

As detailed in ¶¶ 37-66 of the Complaint [ECF 1], Rayone has been knowingly selling knockoffs of Plaintiff's patented wheels using precise counterfeits of all three of Plaintiff's registered FUEL® Marks as shown at Exs. A-C to the Roberts Decl. [ECF 1, ¶¶42-46; *See* Chase Decl., ¶6, Ex. D; Nunez Loera Decl. (sometimes called the Loera Decl or the Nunez Decl), ¶6, Ex. C]. Plaintiff has identified purchasers in three states who together bought over 700 Infringing Wheels for a total of $58,559. [*See* Whitten Decl., ¶8]. The same quantity of authentic FUEL® wheels would typically sell for more than $250,000. [*See* Whitten Decl., ¶8].

Rayone knew its Infringing Wheels were unlawful, so it shipped the center caps for the wheels (the part that features the FUEL® Marks) separately (instructing buyers to place the center caps on the wheels), taking this extra step and incurring extra shipping costs to sneak its Infringing Wheels past U.S. Customs. [*See* Chase Decl., ¶6, Ex. D; Loera Decl., ¶6, Exs. A-C]. Rayone's counterfeiting is thus willful and malicious. [ECF 1, pg. 24, ¶5].

### 4. Rayone Is Willfully Infringing Plaintiff's U.S. Patent No. D937,171

One of Plaintiff's popular wheel designs is protected by U.S. Patent No. D937,171 (the "'171 Patent"), which is illustrated at ¶¶ 25-27 and Ex. 5 to the Complaint. Plaintiff is the owner of all rights to the '171 Patent, which issued on November 30, 2021. *Id*. Plaintiff has complied with the marking requirements of 35 U.S.C. § 287(a). *Id*.

Rayone has infringed the '171 Patent by selling more than 700 of the infringing wheels in the U.S.; their overall appearance is substantially the same as the patented design [ECF 1, ¶¶27, 41, 42, 45, 49, 98-106], for example as shown at ¶8 of the Whitten Decl. Given that the Infringing Wheels are slavish copies of Plaintiff's designs, and that Rayone sold them under counterfeits of Plaintiff's FUEL® Marks, there is no question that Rayone's patent infringement was willful, intentional, and malicious. [ECF 1, ¶¶25, 26, 27, 32, 39, 40, 41, 42, 45-46, 49, 51-66, 98-106, pg. 24, ¶¶1-2, Ex. 5; *See* Chase Decl., ¶6, Ex. D; Loera Decl., ¶6, Ex. C].

### 5. Rayone's Additional Counterfeiting of Plaintiff's FUEL® Marks

In addition to the Infringing Wheels identified in the Complaint, Rayone has also been willfully, intentionally, and maliciously selling **untold quantities** of additional knockoffs of other wheels featuring the FUEL® Marks. [*See* Roberts Decl., ¶ 2].

### 6. Rayone's Knockoffs Are Unsafe and Endangering the Public

Plaintiff obtained samples of Rayone's Infringing Wheels from the settling defendants and inspected them. [*See* Whitten Decl., ¶¶3-4]. There are obvious visual defects in the inside rim which is an important part of the structure of the wheel. Such defects can be disastrous and very dangerous. [*See* Whitten Decl., ¶¶5-6].

### 7. Rayone Is Deceptively Omitting Required Manufacturing Marks So Their Dangerous Knockoff Wheels Cannot Be Traced Back to It

Not only are Rayone's Infringing Wheels unsafe, they also bear false and inapplicable certification marks and no factory markings, so that damage caused by their defects cannot be traced back to it. [*See* Whitten Decl., ¶¶4-5]. Factory markings are required to be registered with NHTSA for wheels to be imported with the required Department of Transportation (DOT) symbol on the wheel, which "constitute[es] a certification by the manufacturer of the rim that the rim complies with all applicable motor vehicle safety standards." 49 CFR 571.120 (FMVSS 120). Rayone's Wheels have no factory markings, while some improperly include a DOT symbol, or even an inapplicable Japanese certification mark. [*See* Whitten Decl., ¶¶4-5].

Rayone's omission of the required marking is plainly intended to ensure that any damage wrought by its Infringing Wheels will be blamed on Plaintiff. One of Rayone's Infringing

Wheels has a date stamp of 2015 [*See* Whitten Decl., ¶¶5-7], proving that Rayone's infringement has been ongoing for almost a decade, exposing Plaintiff to devastating potential liability, as well as egregiously tarnishing Plaintiff's FUEL® brand.

### IV.     DEFAULT JUDGMENT IS APPROPRIATE

#### a. Legal Standard for Default Judgment

After entry of default, the Court may enter a default judgment on the merits. Rule 55(b)(2). If the Court determines that it has jurisdiction and that service was sufficient, it may consider the following: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the Complaint, (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986). "The general rule … is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir.1977).

#### b. This Court Has Subject Matter and Personal Jurisdiction Over Rayone

The Court has subject matter jurisdiction over Plaintiffs' claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367. As for personal jurisdiction, Defendant Rayone is a limited liability company of China, with an address in China. [ECF 1, ¶2]. Rayone has sold the Infringing Wheels in this District to at least the Chase Defendants via Rayone's interactive website [ECF 1, ¶8; *See* Chase Decl., ¶3, Ex. A-D]. Though Rayone did not formally respond to the Complaint, Plaintiff served its **General Manager** at a trade show in Las Vegas pursuant to Rules 4(c), 4(h)(1), 4(e)(1), and Nev.R.Civ.P. 4.2(c)(2). [ECF 8]. Subsequently, Rayone's counsel unsuccessfully attempted to settle through dozens of communications from November 2023 to January 2024. [*See* Greenstein Decl., ¶¶3-5]. Rayone was properly served, had actual notice, and elected not to defend itself.

#### c. The *Eitel* Factors Support Default Judgment

The *Eitel* factors demonstrate overwhelmingly that default judgment should be entered.

● ***Prejudice***: If default judgment is denied, Plaintiff would be left without a remedy for Rayone's widespread and ongoing wanton infringement of Plaintiff's patents and trademarks with unsafe and untraceable knockoff wheels. [ECF 1; *See* Whitten Decl., ¶¶4-5, Ex. A]. Thus, Plaintiff would be severely prejudiced absent entry of default judgment. *Accord, Coach, Inc.*, 2011 WL 1483436, at *4; *Trident Inv. Partners Inc. v. Evans*, No. CV-20-01848-PHX-DWL, 2021 WL 75826, at *2 (D. Ariz. Jan. 8, 2021).

● ***Merits of Plaintiff's Substantive Claims and Sufficiency of the Complaint***: Taken together, the second and third *Eitel* factors essentially require that "a plaintiff state a claim on which [it] may recover." *Coach, Inc.*, 2011 WL 1483436, at *4 (internal quotations omitted).

As a remedy for its trademark-related causes of action, in addition to an injunction, Plaintiff seeks statutory damages in lieu of actual damages. Accordingly, the Court should examine the trademark claims for which statutory damages are available—counterfeiting, 15 U.S.C. § 1117(c). [ECF 1, First Cause of Action]; *see also Coach, Inc.*, 2011 WL 1483436, at *4 (adopting same approach). For design patent infringement, in addition to an injunction Plaintiff seeks damages adequate to compensate for the infringement, in no event less than a reasonable royalty in accordance with 35 U.S.C. §§ 284-85, and also Rayone's total profits pursuant to 35 U.S.C. § 289. [ECF 1, Eighth Cause of Action].

To prove trademark counterfeiting, a plaintiff must establish: (1) the defendant intentionally used a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offer for sale, or distribution of goods or services; and (4) its use was likely to confuse or deceive. *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, 2015 WL 6680807, at *5 (C.D. Cal. Oct. 19, 2015). The Ninth Circuit further requires that "the mark in question be (1) a non-genuine mark identical to the registered, genuine mark of another, where (2) the genuine mark was registered for use on the same goods to which the infringer applied the mark." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 945-46 (9th Cir. 2011). "In a case involving the willful use of a counterfeit mark, a plaintiff may elect statutory damages pursuant to 15 U.S.C. § 1117(c)." *Reflex Media, Inc. v. Chan*, No. SACV16795JFWJEMX, 2021 WL 5936912, at *8 (C.D. Cal. June 4, 2021). As outlined above

and recited in ¶¶ 13-24 and 28-71 of the Complaint and its associated exhibits, Plaintiff has properly alleged all of these elements. [ECF 1]. Thus, Plaintiff has adequately stated a claim on which it may recover statutory damages up to $2,000,000 **per mark** under 15 U.S.C. § 1117(c). *Accord, Coach, Inc.*, 2011 WL 1483436, at *4.

A design patent is infringed if "the patented design, or any colorable imitation thereof," is applied to "any article of manufacture for the purpose of sale." 35 U.S.C. § 289; *see also McIntire v. Sunrise Specialty Co.*, 944 F.Supp.2d 933, 937 (E.D.Cal.2013) (citing *Arminak & Assocs., Inc. v. Saint–Gobain Calmar, Inc.*, 501 F.3d 1314, 1319 (Fed.Cir.2007). To satisfy Section 289, the plaintiff must allege facts sufficient for a factfinder to conclude that "an ordinary observer familiar with the patented product would be deceived into believing that the accused product is the same as the patented design." *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F.Supp.2d 1049, 1055 (C.D.Cal.2011). Plaintiff's patent is "presumed valid" under 35 U.S.C. § 282 and is unchallenged. The images of the patented wheel and the infringing Rayone wheels shown in the Roberts Declaration and in the Greenstein Declaration clearly establish design patent infringement. *See Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed.Cir.2008).

● ***Amount of Money at Stake***: Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico*, 238 F.Supp.2d 1172, 1176 (C.D. Cal. 2002). Rayone has been selling dangerous, untraceable, patent-infringing goods bearing counterfeits of three of Plaintiff's trademarks. Rayone's continued advertising and sale of its Infringing Wheels and its additional knockoffs of Plaintiff's merchandise [*see* Roberts Decl., ¶¶2-7, Ex. I1-J2], despite being served with Plaintiff's detailed Complaint, "augments the seriousness of their conduct." *Coach, Inc.*, 2011 WL 1483436, at *4. Given Rayone's disregard of this litigation, the likelihood that Rayone's conduct may cause confusion or mistake by deceiving customers—as well as **endangering** the public—and Rayone's failure to comply with the judicial process or to participate in the litigation, "**the imposition of a substantial monetary award is justified**." *Id*. (emphasis added). "The amount … at stake is therefore proportionate to Defendant['s] conduct." *Id*.

- ***Possibility of Dispute Concerning Material Facts***: The fifth *Eitel* factor considers the possibility of dispute as to any material facts. Here, Plaintiff filed a well-pleaded Complaint alleging the facts necessary to establish its claims and has provided evidence to support the allegations. In contrast, Rayone has not responded to any of the proceedings, and thus there is no dispute regarding the averments of the Complaint. *Id*. at *5. "The likelihood that any genuine issue may exist is, at best, remote." *Id*.

- ***Whether Default Was Due to Excusable Neglect***: Rayone has had six months to respond to the Complaint and has not done so. There is no evidence that Rayone's failure to appear or otherwise defend was the result of excusable neglect rather than a conscious strategic choice. [*Accord*, Greenstein Decl., ¶5]. Rayone's "failure to appear after being served with the Complaint indicates that the[] failure to appear was willful." *Coach, Inc*., 2011 WL 1483436, at *5.

- ***Strong Policy Favoring Decision on the Merits***: Lastly, the mere existence of Rule 55(b) indicates that the seventh *Eitel* factor is not alone dispositive. *Id*. Rayone's failure to answer the Complaint "makes a decision on the merits impractical, if not impossible." *Id*. "Therefore, the seventh *Eitel* factor does not preclude [entry of] default judgment." *Id*.

## V. REQUESTED REMEDIES

### a. Maximum Statutory Damages are Appropriate and Needed

The remedies for trademark counterfeiting under 15 U.S.C. § 1114 are listed under 15 U.S.C. § 1117(a)-(c). Under subsection (a), a registered mark holder may recover: (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action, subject to the principles of equity. Subsection (b) requires the court to treble the damages assessed under subsection (a) if the defendant "intentionally us[es] a mark or designation, knowing such mark ... is a counterfeit mark ... in connection with the sale, … or distribution of goods." Subsection (c) permits a plaintiff to elect statutory damages, instead of actual damages and profits, for the use of a counterfeit mark. Plaintiffs who elect statutory damages may recover "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." § 1117(c)(1). Where the

defendant's conduct is willful, as here, a court may enhance the statutory damages award to an amount "not more than **$2,000,000 per counterfeit mark per type of goods** or services sold, offered for sale, or distributed, as the court considers just." § 1117(c)(2) (emphasis added).

In deciding the amount of statutory damages, courts have considered: "(1) the expenses saved and the profits reaped by the defendant; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others …; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *JUUL Labs, Inc. v. Chou*, No. CV 21-3056 DSF (PDX), 2023 WL 3886046, at *14 (C.D.Cal. June 8, 2023) (brackets in original).

Plaintiff is unaware of the full extent of Rayone's willful infringement because Rayone failed to participate and provide discovery. But as shown above, Plaintiff has established that Rayone willfully sold its patent-infringing wheels with counterfeits of **three** of Plaintiff's registered FUEL marks, so the maximum statutory damages award under Section 1117(c) is **$6,000,000**. 15 U.S.C. § 1117(c)(2). Applying the factors set out above to Rayone's infringement shows that the maximum award is warranted to punish and deter Rayone's widespread willfully dangerous activity.

### i. *Expenses saved and the profits reaped by the defendant*

Since Rayone failed to participate, it is impossible to know the full extent of its infringement. As described above, Rayone's business model is to sell unsafe and untraceable knockoffs of brand-name wheels worldwide, with Rayone first claiming to have sold "**$3,000,000**+" of its ersatz wheels into the U.S. [*See* Roberts Decl., ¶¶2,5, Ex. E], and three days later reporting "**$3,400,000**+" of such sales [*Id.*, ¶¶2,6, Ex. F]. Thus, according to Rayone, its unlawful counterfeiting is widespread and quickly accelerating.

As for the Infringing Wheels at issue, without discovery Plaintiff identified only 701 sales for a total of $58,559. [*See* Chase Decl., ¶3, Ex. A-D; Loera Decl., ¶3, Ex. A-C; Whitten Decl., ¶8]. Since Rayone did not appear, that entire amount must be considered the Defendant's profits. 15 U.S.C. § 1117(a) (Defendant "must prove all elements of cost or deduction claimed").

While the proven profits are low, the actual profits from Rayone's willful infringement are unknown. In these circumstances a substantial monetary award is called for. *See, e.g., JUUL Labs, Inc.*, 2023 WL 3886046, at *14 (awarding $2,000,000 in statutory damages even though "The profit was de minimis").[2]

### ii. Revenues lost by the plaintiff

The same quantity (701) of the same type of authentic FUEL® wheels would typically sell for more than $250,000 [Whitten Decl., ¶10], though it is unknown how many Infringing Wheels Rayone sold. Rayone was selling its knockoff wheels through the world's largest retail commerce website, Alibaba.com, for just 22% of Plaintiff's prices, including shipping. *Id.* Rayone's widespread advertising of its cheap knockoffs necessarily undermines Plaintiff's goodwill and erodes Plaintiff's prices and profits. [*See* Whitten Decl., ¶12]. Accordingly, the revenue that has and will be lost by Plaintiff is impossible to calculate but likely far exceeds the $250,000 in lost sales from the few infringements Plaintiff was able to identify. *Accord, Tee Turtle, LLC. v. ABmask*, No. CV 21-3572-CBM-E(X), 2021 WL 3598747, at *4 (C.D.Cal. Apr. 29, 2021).

### iii. Value of the trademarks

"The higher the value of the trademark, the greater the likelihood that the infringement will harm the infringed party's reputation." *Volkswagen Grp. of Am., Inc. v. Varona*, No. 19-24838-CIV, 2021 WL 1997573, at *10 (S.D.Fla. May 18, 2021) (citation omitted). Plaintiff is the largest provider of aftermarket wheels in North America with over one billion in annual sales of its proprietary custom wheel designs. [ECF 1, ¶¶13, 20-24]. Plaintiff's total sales of wheels and related products under its FUEL® Marks have exceeded **$500,000,000**. *Id.*, ¶21. Plaintiff has invested millions in promoting its FUEL® Marks, and such trademarks are very

---

[2] Cases where the court granted large statutory damages where the defendant's conduct made assessment of its revenue difficult include: *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, 2007 WL 3287368, at *4 (S.D.N.Y. Nov. 7, 2007); *Rodgers v. Anderson*, 2005 WL 950021, at *3 (S.D.N.Y. Apr. 26, 2005); *Rolex Watch U.S.A., Inc. v. Brown*, 2002 WL 1226863, at *2 (S.D.N.Y. June 5, 2002)); *Volkswagen Grp. of Am., Inc. v. Varona*, No. 19-24838-CIV, 2021 WL 1997573, at *10 (S.D. Fla. May 18, 2021); *Lane Crawford LLC v. Kelex Trading (CA) Inc.*, No. 12 Civ. 9190, 2013 WL 6481354, at *4 (S.D.N.Y. Dec. 3, 2013).

valuable to Wheel Pros and in the marketplace. [*See* Whitten Decl., ¶9]. See, *Philip Morris USA, Inc. v. Castworld Prod., Inc.,* 219 F.R.D. 494, 497 (C.D. Cal. 2003) (awarding $2,000,000 in statutory damages on default as a "conservative award" where the mark had high value).

### *iv. Deterrent effect on others besides the defendant*

"In addition to deterring Defendants from counterfeiting and infringement, the Court must also take into account the need to discourage other potential infringers." *Volkswagen Grp.*, 2021 WL 1997573, at *11. As the industry leader in aftermarket wheels, Plaintiff is forced to spend millions policing the marketplace to protect itself from Chinese knockoffs shipped into the U.S. by companies like Rayone. [*See* Whitten Decl., ¶¶8-9]. Deterrence is especially important here, not only to prevent public confusion and to protect Plaintiff's property rights, but most importantly to protect the public from untraceable substandard wheels that could cause injury or death. [*See* Whitten Decl., ¶¶4-7, 12, Ex. A]. Courts "consider whether the counterfeit goods pose a risk to the public safety." *Volkswagen Grp.,* 2021 WL 1997573, at *10. Where products are regulated to protect the safety of consumers, counterfeits pose critical risks to the public and "warrant a higher award of damages … [p]roof of actual harm is not required." *JUUL Labs,* 2023 WL 3886046, at *14.[3] Counterfeit wheels like Rayone's, that fail to meet federal safety regulations [*See* Whitten Decl., ¶¶4-8, Ex. A], pose severe risks and "warrant a higher award of damages" for effective deterrence. *Id.,* at *14.

### *v. Whether the defendant's conduct was innocent or willful*

"Conduct is willful if the infringer was knowingly and deliberately cashing in upon the goodwill of the infringed." *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1170 (11th Cir. 2019) (citation omitted). Rayone's knockoffs of Plaintiff's patented wheel design use precise counterfeits of all three of Plaintiff's registered Marks. [ECF 1, ¶¶37-66; *See* Chase Decl., ¶6, Ex. D; Loera Decl., ¶6, Ex. C]. Additionally, Rayone acted to hide its infringement

---

[3] *Accord, Innovation Ventures, LLC v. Ultimate One Distrib. Corp*., 176 F. Supp. 3d 137, 170 (E.D.N.Y. 2016); *Unilever Supply Chain, Inc. v. I & I Wholesale Food Inc*., No. 10-1077 (RJD) (RERx), 2011 WL 1113491, at *3-4 (E.D.N.Y. Feb. 17, 2011); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Eastimpex*, No. 04-4146 MMC, 2007 WL 328696, at *13 (N.D. Cal. Feb. 2, 2007).

by shipping the center caps separately to sneak its Infringing Wheels past customs. [*See* Chase Decl., ¶6, Ex. D; Loera Decl., ¶6, Exs. A &B]. Rayone plainly knew what it was doing. [*See* Chase Decl., ¶6].

Because Rayone's Infringing Wheels are slavish copies of Plaintiff's patented wheel design, and Rayone sold them under identical counterfeits of Plaintiff's FUEL® Marks, there is no question that Rayone's patent infringement was also willful and malicious, which warrants substantial damages. [ECF 1, ¶¶25, 26, 27, 32, 39, 40, 41, 42, 45-46, 49, 51-66, 98-106, pg. 24, ¶¶1-2, Ex. 5; *See* Chase Decl., ¶6, Ex. D; Loera Decl., ¶6, Exs. A-C].

### *vi. Whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced*

With full knowledge of this case and the serious allegations against it, Rayone made the strategic decision to avoid appearing and thus prevent Plaintiff from discovering the true extent of its infringement. [*See* Greenstein Decl., ¶5]. "This warrants a substantially higher award." *Accord, JUUL Labs*, 2023 WL 3886046, at *14.

### *vii. The potential for discouraging the defendant*

"Statutory damages differ meaningfully from actual damages: while actual damages only compensate the victim, statutory damages may compensate the victim, penalize the wrongdoer, deter future wrongdoing, or serve all those purposes." *Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1008 (9th Cir. 2023). "Significant damages are justified here due to Defendants' selling of counterfeit wheels that pose a safety risk to the public, in that they are not subject to the rigorous quality and safety standards that [Plaintiff's] genuine wheels are subjected to." *Volkswagen Grp.*, 2021 WL 1997573, at *15. This case is even worse than *Volkswagen* because Plaintiff has *proof* that Rayone's wheels are substandard and dangerous. [*See* Whitten Decl., ¶¶4-12, Exs. A & B], and that Rayone has applied false certification marks and no factory markings, so that injury resulting from its wheels cannot be traced back to it and would likely be blamed on Plaintiff. [*See* Whitten Decl., ¶¶4-7]. *Illinois Tool Works Inc. v. Hybrid Conversions, Inc.*, 817 F. Supp. 2d 1351, 1356 (N.D. Ga. 2011) (Where the counterfeit goods created a safety risk, "significant statutory damages" of $1,000,000 were warranted despite evidence showing that

the defendants' total sales of the counterfeit goods amounted to $35,455). Additionally, by selling its dangerous Infringing Wheels over the Internet—especially on the world's largest retail commerce website, Alibaba—Rayone has access to a "virtually limitless number of customers." *Rolex Watch U.S.A., Inc. v. Jones*, No. 99 Civ. 2359, 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002). Accordingly, "a significant statutory damages amount is necessary here to deter Defendants' continued and future infringement, to deter potential future infringers, and to curb the proliferation of counterfeiting operations on online marketplaces." *Volkswagen Grp.,* 2021 WL 1997573, at *12.

Moreover, Rayone is a large-scale counterfeiting operation involved in knocking off other famous brands. [*See* Roberts Decl., ¶¶8-11, Exs. H-M]. A statutory damage award of $6,000,000 would be less than double Rayone's claimed U.S. sales, a far more lenient result than in some cases of less egregious infringement. *See, e.g., Volkswagen Grp..,* 2021 WL 1997573, at *15. In these uniquely dangerous circumstances Plaintiff's requested statutory damages award of $2,000,000 for each of the three (3) FUEL® marks for a total of **$6,000,000** is necessary and wholly appropriate. *Accord, Nike, Inc. v. Top Brand, Co.,* No. 00 Civ. 8179 (KMW) (RLE), 2006 WL 2946472, at *2 (S.D.N.Y. Feb. 27, 2006) (awarding $17 million in statutory damages against one group of defaulting defendants).

### b. Treble Damages Are Appropriate For Rayone's Patent Infringement

Defendants found to have infringed design patents "shall be liable to the [patent] owner to the extent of his total profit, but not less than $250." 35 U.S.C. § 289. Plaintiff has evidence proving Rayone sold at least 701 Infringing Wheels for a total of $58,559. [*See* Chase Decl., ¶3, Ex. A-D; Loera Decl., ¶3, Ex. A-C; Whitten Decl., ¶8]. Because Rayone has not appeared, its costs are unknown, thus by default Rayone's profits were also $58,559. In view of the Rayone's willful infringement and its unknown extent, trebling of Rayone's known profits under 35 U.S.C. § 284 is appropriate. *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 792 (Fed. Cir. 1995). Plaintiff seeks **$175,677** in damages for patent infringement.

### c. A Permanent Injunction is Needed to Protect the Public

The Court has discretion to enjoin patent and trademark infringement according to traditional equitable principles. *See* 15 U.S.C. § 1116(a); 35 U.S.C. § 283; *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391-92 (2006); *see also* A.R.S. § 44-1451(B)(1). A plaintiff must satisfy four factors to obtain injunctive relief: (1) suffered irreparable harm; (2) remedies available at law, such as monetary damages, are inadequate compensation for such harm; (3) the balance of hardships between the parties support a remedy in equity; and (4) the public interest would not be disserved by a permanent injunction. *eBay*, 547 U.S. at 391.

### i. Plaintiff is suffering irreparable harm and there is no adequate remedy at law

There is a rebuttable presumption of irreparable harm upon a finding of trademark infringement. 15 U.S.C. § 1116(a). In trademark cases, an injunction "is the remedy of choice … since there is no adequate remedy at law for the injury caused by … continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir.1988). See, also, 15 U.S.C. § 1116(a) as amended by the Trademark Modernization Act of 2020 ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection …"). Plaintiff has established the merits of its claims for trademark counterfeiting by showing that Rayone is selling counterfeits of Plaintiff's registered marks. [ECF 1 at ¶¶ 13-24 and 28-71].

Plaintiff was also irreparably harmed by Rayone's patent infringement. "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Sutton v. Shasta Industries Inc.*, No. CV-20-02320-PHX-SMB, 2021 WL 2191034, at *3 (D. Ariz. Jan. 4, 2021). Rayone has diminished and will diminish the value of Plaintiff's patents by selling knockoffs. [*See* Whitten Decl., ¶¶10-12]. While a substantial punitive remedy is appropriate, damages are insufficient to compensate Plaintiff for the loss of goodwill caused by Rayone's cheap, dangerous, untraceable knockoffs.

### ii. The balance of hardships favors an injunction

In evaluating injunctive relief, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."

*Klein v. City of San Clemente*, 584 F.3d 1196, 1199-1200 (9th Cir.2009). If a permanent injunction is not granted, Plaintiff will continue to suffer irreparable damage through a likelihood of confusion among the purchasing public as to the source of goods associated with Plaintiff's marks and patented design, and devaluation of Plaintiff's goodwill. [*See* Whitten Decl., ¶¶10-12, Ex. B]. In contrast, Rayone will suffer no cognizable hardship whatsoever; only restriction from violating the law, damaging Plaintiff, and endangering the public.

### iii. *A permanent injunction serves the public interest*

"An injunction that prevents consumer confusion in trademark cases … serves the public interest." *American Rena Intern. Corp. v. Sis-Joyce Intern. Co. Ltd.*, 534 Fed.Appx. 633, 636 (9th Cir. 2013). Injunctions are also vital to the patent system. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 809 F.3d 633, 647 (Fed. Cir. 2015). "As a result, the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors." *Id*. An injunction would not only protect Plaintiff's rights, but most importantly would protect the public from being victimized by Rayone's substandard wheels. [Whitten Decl., ¶¶10-12, Ex. B]. *Accord, e.g., JUUL Labs*, 2023 WL 3886046, at *14-15 (enjoining Chinese counterfeiter of regulated goods that could endanger the public; collecting cases).

### d. An Award of Attorneys' Fees is Appropriate

Both the Lanham Act and the Patent Act authorize the court to award attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a); 35 U.S.C. § 285; *see also* A.R.S. § 44-1453(J). [ECF 1 at ¶¶ 55, 67, 75]. Courts examine the "totality of the circumstances" to determine if the infringement was exceptional. *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1180-81 (9th Cir.2016). These circumstances include frivolousness, motivation, objective unreasonableness, and the need to advance considerations of compensation and deterrence. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554, n. 6 (2014). "Courts applying the *Octane Fitness* analysis commonly find that willful infringement, in conjunction with non-participation in litigation, makes a case 'exceptional.'" *Trident*, 2021 WL 75826 at * 8 (citation omitted).

Rayone willfully counterfeited three of Plaintiff's registered trademarks and infringed Plaintiff's patent on dangerous and untraceable wheels while continuing its large-scale counterfeiting operation. [*See* Whitten Decl., ¶¶8-12, Ex. A; Roberts Decl., ¶¶2-11, Exs. A-M]. By defaulting, Rayone has admitted willful infringement. *Id.* at *8. Attorneys' fees are thus appropriate. *See Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1291-92 (C.D. Cal. 2001); *Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1130 (C.D. Cal. 2023). Plaintiff will submit a Rule 54(d) Motion for Attorneys' Fees and Bill of Costs within fourteen (14) days after entry of judgment.

Rayone willfully and intentionally counterfeited three of Plaintiff's registered trademarks and infringed Plaintiff's patent on dangerous and untraceable wheels while continuing its large-scale counterfeiting operation. [*See* Whitten Decl., ¶¶8-12 Ex. A; Roberts Decl., ¶¶2-11, Exs. A-M]. By defaulting, Rayone has admitted willful and intentional infringement. *Id.* at *8. Attorneys' fees are thus appropriate. *See Discovery Commc'ns, Inc. v. Animal Planet*, Inc., 172 F. Supp. 2d 1282, 1291-92 (C.D. Cal. 2001); *Blumenthal Distrib., Inc. v. Comoch Inc.*, 652 F. Supp. 3d 1117, 1130 (C.D. Cal. 2023). Plaintiff will submit a Rule 54(d) Motion for Attorneys' Fees and Bill of Costs within fourteen (14) days after entry of judgment.

## VI.    CONCLUSION

Plaintiff respectfully requests entry of a default judgment against Defendant Rayone in the form lodged herewith.

DATED this 29th day of April, 2024.

> **WARNER ANGLE HALLAM**
> **JACKSON & FORMANEK PLC**
>
> By:    */s/ Andrea M. Simbro*
> Andrea M. Simbro
> 2555 East Camelback Road, Suite 800
> *Phoenix, Arizona 85016*
> *Attorneys for Plaintiff*